**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| BOILERMAKER-BLACKSMITH NATIONAL PENSION TRUST and JOHN FULTZ as a Fiduciary of the BOILERMAKER-BLACKSMITH NATIONAL PENSION TRUST, <br><br> Plaintiffs, <br><br> vs. <br><br> PSF INDUSTRIES, INC., and XYZ CORPORATIONS and/or INDIVIDUALS 1-10, <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) Case No. 2:18-cv-_____ |

**COMPLAINT**

Plaintiffs, Boilermaker-Blacksmith National Pension Trust and John Fultz as a fiduciary of the Boilermaker-Blacksmith National Pension Trust (collectively "Plaintiffs"), by their counsel, Tucker Arensberg, P.C., file the following Complaint:

**REQUEST FOR PLACE OF TRIAL**

1. Pursuant to District of Kansas Rule 40.2, the Pension Fund requests that trial be held in Kansas City, Kansas.

**NATURE OF THE ACTION**

2. This is an action under the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended by the Multi-Employer Pension Plan Amendments Act of 1980 ("MPPAA"), 29 U.S.C. §1001 et seq. (1982), for the collection of withdrawal liability, interest, liquidated damages and attorneys' fees incurred as the result of an employer's failure to make monthly withdrawal liability payments (known as "interim payments") pending its dispute of such liability.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 because it arises under Sections 502(e), 502(f), and 4301(c) of ERISA, 29 U.S.C. §§ 1132(e), 1132(f) and 1451(c).

4. Venue lies in this district under Sections 502(e)(2) and 4301(d) of ERISA, 29 U.S.C. §§ 1132(e)(2) and 1451(d), because Plaintiff Boilermaker-Blacksmith National Pension Trust's employee benefit plan is administered in this district.

## PARTIES

5. Plaintiff Boilermaker-Blacksmith National Pension Trust ("Pension Fund") is a multi-employer pension plan within the meaning of Sections 3(37) and 4001(a)(3) of ERISA, 29 U.S.C. §§1002(37) and 1301(a)(3), and maintains its principal place of business at 754 Minnesota Avenue, Kansas City, Kansas 66101.

6. The Pension Fund is maintained for the purpose of providing retirement and related benefits to eligible participants and beneficiaries.

7. Plaintiff John Fultz is a fiduciary of the Pension Fund within the meaning of Section 3(21)(A) of ERISA, 29 U.S.C. § 1002(21)(A).

8. Upon information and belief, Defendant PSF Industries, Inc. ("PSF") is a Washington corporation which, at all relevant times, had its principal place of business at 65 South Horton Street, Seattle, Washington 98134.

9. Defendants XYZ Corporations and/or Individuals 1-10 are fictitious entities and/or individuals with identities currently unknown to the Pension Fund, but which, upon information and belief, were under the common control with PSF pursuant to Section 4001(b)(1) of ERISA, 29 U.S.C. § 1301(b)(1).

10. For purposes of withdrawal liability, PSF and Defendants XYZ Corporations and/or Individuals 1-10 constitute a controlled group.

**BACKGROUND**

11. At all relevant times, the Pension Fund was a third-party beneficiary to multiple collective bargaining agreements between PSF and the International Brotherhood of Boilermakers, Iron Ship Builders, Blacksmiths, Forgers and Helpers AFL-CIO, CLC, under which agreements PSF was obligated to report and submit Pension Fund contributions for each hour of covered work performed by its employees.

12. At all relevant times, PSF was subject to the Pension Fund's Trust Agreement, the relevant portions of which are attached as **Exhibit A.**

13. In August 2017, PSF went out of business, permanently ceasing all covered operations under the Pension Fund which thus permanently ended PSF's monthly contributions to the Pension Fund.

14. As a result, and because no exemption to withdrawal liability applies, PSF triggered a complete withdrawal under Section 4203(a) of ERISA, 29 U.S.C. § 1383(a).

15. In November 2017, Segal Consulting, a leading independent actuarial firm retained by the Pension Fund, determined that the net withdrawal liability assessable to PSF is $16,551,038.

16. Segal Consulting also determined that PSF's withdrawal liability payment schedule under ERISA and its regulations was: 57 monthly payments of $331,455.26 each, plus a final payment of $127,680.19.

17. In accordance with Section 4219 of ERISA, 29 U.S.C. § 1399, the Pension Fund sent PSF and Stanley Miller a Withdrawal Liability Notice & Demand letter dated November 9, 2017, attached as **Exhibit B**, stating that:

    a. In early 2017, PSF triggered a complete withdrawal from the Pension Fund, within the meaning of Section 4203 of ERISA, 29 U.S.C. § 1383, in the amount of $16,551,038;

    b.    The Building & Construction Industry Exemption does not apply;

    c.    PSF could discharge its withdrawal liability by either making: (i) a lump sum payment to the Pension Fund in the amount of $16,551,038; or (ii) 57 equal monthly payments of $331,455.26 followed by a final monthly payment of $127,680.19, with the first payment being due within 60 days from PSF's receipt of the letter, <u>i.e.</u>, on January 9, 2018;

    d.    Failure by PSF to make payments when due would result in interest accruing on each payment from the due date until the date payment is made;

    e.    Failure by PSF to make payments when due would result in the Pension Fund initiating an action to recover interest, liquidated damages, attorneys' fees and legal costs;

    f.    The Pension Fund's Withdrawal Liability Notice & Demand letter constitutes notice to each member of PSF's controlled group, which members are jointly and severally liable for PSF's withdrawal liability under Section 4001(b)(1) of ERISA, 29 U.S.C. § 1301(b)(1);

    g.    Stanley Miller was a member of PSF's controlled group and therefore was jointly and severally liable for PSF's withdrawal liability; and

    h.    The Pension Fund reserved all rights subsequently to bring any and all claims relating to PSF's withdrawal liability against other entities and individuals in the PSF controlled group.

18.    On January 2, 2018, PSF and Stanley R. Miller filed a joint Request for Review pursuant to Section 4219(b)(2) of ERISA, 29 U.S.C. § 1399(b)(2), attached as **Exhibit C**, asserting that the Pension Fund's' Withdrawal Liability Notice & Demand was erroneous.

19. PSF and Stanley R. Miller requested that the Pension Fund's Board of Trustees rescind the withdrawal liability assessment against them, or, alternatively, recalculate and revise PSF's withdrawal liability and payment schedule. **Exhibit C**, p. 4.

20. Section 4219(c)(2) of ERISA, 29 U.S.C. § 1399(c)(2), which is known as the "Pay Now - Dispute Later" rule, requires that an employer (and any members of the employer's controlled group) make interim withdrawal liability payments "in accordance with the schedule set forth by the plan sponsor . . . beginning no later than 60 days after the date of the demand notwithstanding any request for review or appeal of determination of the amount of such liability or the schedule."

21. Because the Pension Fund sent PSF the Withdrawal Liability Notice & Demand on November 9, 2017, PSF's first interim payment of $331,455.26 was due by January 9, 2018, regardless of the fact that PSF and Stanley R. Miller sought review of the Pension Fund's withdrawal liability assessment.

22. PSF did not make its first interim payment by January 9, 2018.

23. In accordance with Section 4219(c)(5) of ERISA, 29 U.S.C. § 1399(5), the Pension Fund sent PSF a 60-Day Cure Notice on January 11, 2018, attached as **Exhibit D**.

24. PSF cured its missed January 9, 2018, payment in March 2018 by providing the Pension Fund a check in the amount of $405,741.01 (which included interest and liquidated damages from the date the payment was originally due).

25. Aside from that first interim withdrawal liability payment, PSF has, to date, failed to make any other payments in accordance with the Pension Fund's monthly payment schedule as set forth in the Withdrawal Liability Notice & Demand.

26. The Pension Fund sent PSF additional 60-Day Cure Notices on March 19, 2018, April 12, 2018, June 13, 2018, July 17, 2018, July 30, 2018, and August 22, 2018, copies of which are included within **Exhibit D**.

27. By letter dated June 13, 2018, attached as **Exhibit E**, the Pension Fund responded to the Request for Review as follows:

    a. The Pension Fund withdrew its Withdrawal Liability Notice & Demand directed to Stanley R. Miller, while reserving the right to re-assess him later for withdrawal liability or assess any other owner (or former owner) of PSF, including Mr. Jeffrey Brown and Ms. Shara Brown, as members of the PSF controlled group and/or for withdrawing from the controlled group in an effort to evade or avoid withdrawal liability, to the extent the Pension Fund subsequently discovers evidence of the same;

    b. The Pension Fund rejected PSF's contention that the Building & Construction Industry Exemption applies to preclude the assessment of withdrawal liability against PSF;

    c. The Pension Fund rejected PSF's contention that the Pension Fund's actuary had miscalculated the withdrawal liability assessment by improperly including surcharges in the calculation.

28. On June 28, 2018, PSF and Stanley R. Miller sent the Pension Fund a Demand and Notice of Initiation of Arbitration Multiemployer Withdrawal Liability Dispute, attached as **Exhibit F,** providing notice to the Pension Fund that they dispute and are initiating arbitration as to "the determination of withdrawal liability with respect to the [Pension Fund] and that the [Pension Fund] is entitled to seek recovery of any alleged liability from PSF, any purported member of its controlled group, and Mr. Miller."

29. In all, PSF identified seven issues that it plans to dispute in the forthcoming arbitration proceedings. **Exhibit F**.

30. By letter dated August 16, 2018, attached as **Exhibit G**, the Pension Fund sent PSF an Amended Response to Request for Review, which included two additional reasons why the Building & Construction Industry Exemption does not apply.

31. The parties have selected an arbitrator to resolve the underlying dispute regarding the Pension Fund's assessment of PSF's withdrawal liability.

32. ERISA's Pay Now - Dispute Later rule requires PSF to make interim withdrawal liability payments while it pursues arbitration against the Pension Fund with regard to the issues raised in its Demand and Notice of Initiation of Arbitration Multiemployer Withdrawal Liability Dispute.

33. Section 4221(d) of ERISA, 29 U.S.C. § 1401(d), provides that when a party initiates arbitration to resolve a dispute under Section 4203 of ERISA, 29 U.S.C. § 1383, the employer must make interim payments as determined by the Pension Fund "until the arbitrator issues a final decision with respect to the determination submitted for arbitration."

34. In each 60-Day Cure Notice, the Pension Fund advised PSF that failure to cure its delinquent payments (with liquidated damages of 10% and interest of 12% annually on both the principal and the liquidated damages) would result in the Pension Fund initiating an action in federal court to collect them, plus additional interest, attorneys' fees and costs. **Exhibit D**.

35. Despite these warnings, PSF continues to avoid its monthly interim withdrawal liability payment obligations and repeatedly fails to cure each delinquency.

## COUNT I

### INTERIM PAYMENTS PURSUANT TO 29 U.S.C. §§ 1399(c)(2) and 1401(d) AGAINST PSF INDUSTRIES, INC.

36. The Pension Fund incorporates the foregoing allegations as if fully set forth at length.

37. PSF is indebted to the Pension Fund due to its failure to make interim withdrawal liability payments that arose pursuant to multiple collective bargaining agreements, which incorporated the Pension Fund's Trust Agreement.

38. The Pension Fund notified Defendants by letter dated November 9, 2017, that PSF had withdrawn from the Pension Plan in 2017 within the meaning of Section 4203 of

ERISA, 29 U.S.C. §1383, and provided a payment schedule for the payment of withdrawal liability.  **Exhibit B**.

39.     Although Defendants are disputing the Pension Fund's withdrawal liability determination through a mandatory arbitration process, Sections 4219(c)(2) and 4221(d) of ERISA, 29 U.S.C. §§ 1399(c)(2) and 1401(d), nevertheless require that PSF make the monthly interim withdrawal liability payments as determined by the Pension Fund pending that process.

40.     In accordance with Section 4219(c)(5) of ERISA, 29 U.S.C. § 1399(c)(5), the Pension Fund issued PSF several 60-Day Cure Notices following PSF's failure to timely make its monthly payments.  **Exhibit D**.

41.     To date, PSF has failed to make its obligatory interim withdrawal liability payments in the amount of $331,445.26 per month for seven consecutive months, beginning in February 2018 and continuing through August 2018.

42.     Because PSF has contested the Pension Fund's assessment of withdrawal liability by initiating arbitration, the Pension Fund is unable to require PSF to make immediate payment of the outstanding amount of withdrawal liability under Section 4219(c)(5) of ERISA, 29 U.S.C. § 1399(c)(5).

43.     Therefore, while the deadline for PSF to cure five of its seven missed payments has expired, PSF still has an opportunity to cure missed payments that were due on July 9, 2018, and August 9, 2018.  **Exhibit D**.

44.     Nonetheless, in light of PSF's disregard for the Pension Fund's other 60-Day Cure Notices, the Pension Fund has no expectation that PSF will cure these missed payments. To the contrary, the Pension Fund expects that PSF will continue ignoring its obligation to make interim payments under ERISA's Pay Now - Dispute Later rule.

45.     As a result, under Section 4219(c)(2) of ERISA, 29 U.S.C. §1399(c)(2), PSF is <u>currently</u> delinquent to the Fund for five missed interim withdrawal liability payments (February

through June 2018) in the amount of $1,657,226.30. See **Exhibit H**, setting forth the relevant calculations.

46. If and when PSF fails to cure missed payments that were due in July and August, 2018, PSF will owe the Pension Fund additional interim withdrawal liability payments in the amount of $331,445.26 for each of those months, for a total of $662,890.52. **Exhibit H**.

47. If PSF continues to miss its future monthly payment obligations, the Pension Fund will continue to send PSF a 60-Day Cure Notice for each missed payment. Upon PSF's anticipated failure to cure, PSF will owe the Pension Fund $331,445.26 for each missed monthly payment. See **Exhibit I**, setting forth the future payment schedule.

48. In addition to the interim withdrawal liability payments, the Pension Fund is entitled to the statutory remedies set forth in Section 502(g)(2) of ERISA, 29 U.S.C. § 1132(g)(2).

49. Section 502(g)(2)(C) of ERISA, 29 U.S.C. § 1132(g)(2)(C), requires that the Court award the Pension Fund an amount equal to the greater of (i) interest on the unpaid contributions, or (ii) liquidated damages provided for under the plan in an amount not in excess of 20%.

50. In this case, an award of liquidated damages yields the higher amount of those two options.

51. Liquidated damages for delinquent withdrawal liability payments are assessed at the same rate for delinquent monthly contributions as provided for in Article IV, Section 3 of the Trust Agreement and shall become due and payable following the day on which the delinquency occurred. **Exhibit A**.

52. Article IV, Section 3 of the Trust Agreement requires the payment of liquidated damages in an amount not in excess of 20% of the contributions due, but no less than $10.00 for each delinquent reporting period. **Exhibit A.**

53. When the Pension Fund is required to file an action in federal court to collect

delinquent withdrawal liability payments, the Pension Fund assesses liquidated damages at a rate of 10% of the withdrawal liability payments that are due.

54. PSF therefore <u>currently</u> owes the Pension Fund $165,722.63 in liquidated damages for its five missed payments (February through June, 2018). **Exhibit H**.

55. In accordance with the above, if and when PSF fails to cure its missed payments that were due in July and August, 2018, PSF will owe the Pension Fund additional liquidated damages in the amount of $33,144.53 for each of those months, for a total of $66,289.06. **Exhibit H.** This process will continue as PSF continues to ignore its monthly payment obligations.

56. Section 502(g)(2)(B) of ERISA, 29 U.S.C. § 1132(g)(2)(B), requires the Court to award the Pension Fund interest on unpaid contributions, which is "determined by using the rate provided under the plan."

57. Article IV, Section 3 of the Trust Agreement provides that the Pension Fund is entitled to interest at the rate of equal to 12% per annum on delinquent contributions <u>and</u> liquidated damages, from the date due. **Exhibit A**.

58. PSF <u>currently</u> owes the Pension Fund interest in the amount of $91,147.45 for its five missed payments (February through June, 2018). **Exhibit H.**

59. In accordance with the above, if and when PSF fails to cure its missed payments that were due in July and August, 2018, PSF will owe the Pension Fund additional interest at a rate of 12% per annum (or 1% per month) for each payment, beginning from the date that it was due.

60. So long as PSF ignores its interim withdrawal liability payment obligations, the amount of interest that it owes to the Pension Fund will continue to accrue at this rate of 1% per month.

61. Section 502(g)(2)(D), 29 U.S.C. § 1132(g)(2)(D), also mandates that PSF pay the Pension Fund's reasonable attorneys' fees and costs in this action.

62. Prior to the Court's entry of judgment in this matter, the Pension Fund will submit a petition for reasonable attorneys' fees and costs for the Court's review.

63. Because the monthly interim withdrawal liability payments, liquidated damages, interest, attorneys' fees and costs to which the Pension Fund is entitled will keep increasing in the event that PSF continues ignoring its obligations to pay them, the Pension Fund reserves its right to adjust its calculations and collect additional amounts as they become due and owing.

WHEREFORE, Plaintiffs Boilermaker-Blacksmith National Pension Trust and John Fultz as a fiduciary of the Boilermaker-Blacksmith National Pension Trust demand judgment against Defendant PSF in the amount of $1,914,096.38 as of this date, plus additional monthly interim withdrawal liability payments that shall become due and owing, as well as all interest, liquidated damages, attorneys' fees and costs.

## COUNT II

### INTERIM PAYMENTS PURSUANT TO 29 U.S.C. §§ 1301(b)(1) and 1399(c)(2) AGAINST XYZ CORPORATIONS AND/OR INDIVIDUALS 1-10

64. The Pension Fund incorporates the foregoing allegations as if fully set forth at length.

65. Under Section 4001(b)(1) of ERISA, 29 U.S.C. § 1301(b)(1), each member of a controlled group is jointly and severally liable for the withdrawal liability of any other member of the same controlled group.

66. With respect to an assessment for withdrawal liability, notice to one member of a controlled group constitutes notice to all members of the same controlled group.

67. As trades or businesses under common control, PSF and XYZ Corporations and/or Individuals 1-10 were members of a single controlled group at the time of PSF's withdrawal from the Pension Fund and, therefore, constitute a single employer for purposes of withdrawal liability.

68. As such, Defendant XYZ Corporations and/or Individuals 1-10 are jointly and severally liable to the Pension Fund for PSF's above-described interim withdrawal liability, liquidated damages, interest, attorneys' fees and costs.

WHEREFORE, Plaintiffs Boilermaker-Blacksmith National Pension Trust and John Fultz as a fiduciary of the Boilermaker-Blacksmith National Pension Trust demand judgment against Defendant XYZ Corporations and/or Individuals 1-10 in the amount of $1,914,096.38 as of this date, plus additional monthly interim withdrawal liability payments that shall become due and owing, as well as all interest, liquidated damages, attorneys' fees and costs.

Respectfully submitted,

**SEIGFREID BINGHAM, P.C.**

/s/ Brad K. Thoenen
Brad K. Thoenen, Esquire
KS Id. No. 24479
bthoenen@sb-kc.com
Rachel H. Baker, Esquire
KS Id. No. 70148
rbaker@sb-kc.com
2323 Grand Boulevard, Suite 1000
Kansas City, MO 64108
(816) 265-4149

and

*To seek admission Pro Hac Vice*

**TUCKER ARENSBERG, P.C.**

*/s/ Neil J. Gregorio*
Neil J. Gregorio, Esquire
Pa. Id. No. 90895
Bradley S. Tupi, Esquire
Pa. Id. No. 28682
Scott R. Leah, Esquire
Pa. Id. No. 57564
Richard B. Tucker, III, Esquire
Pa. Id. No. 24961
Brian A. Pepicelli, Esquire
Pa. Id. No. 316605

Counsel for Plaintiffs, Boilermaker-Blacksmith National Pension Trust and John Fultz as a fiduciary of the Boilermaker-Blacksmith National Pension Trust