IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

BOILERMAKER-BLACKSMITH           )
NATIONAL PENSION TRUST and       )
JOHN FULTZ as Fiduciary,         )
                                 )
                Plaintiffs,      )
                                 )
        v.                       )        Case No. 18-2467-JWL
                                 )
PSF INDUSTRIES, INC.,            )
                                 )
                Defendant.       )
                                 )
_____  )

## <u>**MEMORANDUM AND ORDER**</u>

Plaintiffs are a multiemployer pension fund and its fiduciary (collectively, "the Fund"), and defendant PSF Industries, Inc. ("PSF") was an employer that contributed to and then withdrew from the Fund. The Fund brought this suit to enforce PSF's obligation to make interim withdrawal liability payments to the Fund while the parties arbitrate PSF's ultimate liability, pursuant to the Multiemployer Pension Plan Amendments Act of 1980 (MPPAA), 29 U.S.C. §§ 1381-1461. The matter presently comes before the Court on the parties' cross-motions for summary judgment. For the reasons set forth below, the Court concludes that PSF may not rely on any equitable exception to the statutory obligation to make interim payments. Accordingly, the Court **grants** the Fund's motion on the issue of liability (Doc. # 21), and it denies PSF's motion (Doc. # 23). The Fund shall file a motion,

within 30 days of the issuance of this order, seeking a determination of the specific amount owed by PSF.

## I.    <u>Background</u>

The parties have stipulated to the relevant facts. PSF was an employer that contributed to the Fund, but it permanently ceased making contributions to the Fund in 2017. The Fund sent PSF a demand letter, in which it stated that PSF had triggered a complete withdrawal from the Fund pursuant to 29 U.S.C. § 1983; that the amount of PSF's withdrawal liability was $16,551,038; and that PSF could pay that amount according to a particular schedule beginning on a particular date. PSF challenged that determination, the Fund responded, and the parties eventually initiated an arbitration to decide the issue of PSF's withdrawal liability, which arbitration is still pending. PSF made one payment to the Fund, but it has not made all of the interim payments demanded by the Fund. The Fund now seeks payment by PSF of all of the demanded withdrawal liability, plus interest, liquidated damages, attorney fees, and costs, pursuant to 29 U.S.C. § 1132(g)(2). The parties agreed to submit this issue to the Court in the first instance by filing motions for summary judgment.

## II.    <u>Analysis</u>

The MPPAA provides that an employer that withdraws from a multiemployer pension fund must make withdrawal liability payments to the fund in an amount determined under the statute. *See* 29 U.S.C. § 1381(a). Once a fund determines that an employer has

withdrawn, it must notify the employer of the amount of the liability and demand payment in accordance with a schedule. *See id.* §§ 1382, 1399(b)(1). Any dispute between an employer and a fund concerning withdrawal liability must be resolved by arbitration in accordance with the statute. *See id.* §1401(a)(1). Finally, even if an employer disputes the withdrawal liability asserted by a fund, the MPPAA requires the employer to make the demanded payments to the fund, beginning within 60 days after the fund's demand, and the employer must continue to make payments until the dispute has been resolved in arbitration. *See id.* §§ 1399(c)(2), 1401(d). This last requirement is commonly referred to as the "pay now, dispute later" provision of the MPPAA.

PSF does not dispute that the Fund demanded withdrawal liability payments in accordance with a particular schedule, as required under the MPPAA. PSF also concedes that it would ordinarily be required to make the payments while the arbitration is ongoing. As its sole defense, however, PSF argues that the Court should recognize an equitable exception to the "pay now, dispute later" provision of the MPPAA, by which the Court would consider the likelihood of PSF's success in the arbitration[1] and any irreparable harm that would result if PSF were required to make the payments. PSF further argues that it should not be required to make payments under such an exception because it is likely to succeed in the arbitration and because it would suffer irreparable harm, as it lacks sufficient

---

[1] PSF contends in the arbitration that it is exempt from withdrawal liability under the MPPAA as an employer in the building and construction industry, and the parties disagree about the manner in which PSF's employees should be counted for purposes of applying that exemption.

funds to make all of the payments, and payment of its remaining funds would not allow it to litigate the arbitration to its conclusion.

Thus, the Court must first determine whether any equitable exception to the MPPAA's requirement should be recognized. The Tenth Circuit has not addressed that issue. The Court concludes, however, that the Tenth Circuit would rule either that no such exception exists or that any possible exception is too narrow to apply in this case. Accordingly, the Court agrees with the Fund that PSF must make the demanded payments.

The Sixth Circuit is the circuit court that has addressed this issue most recently, and the Court agrees with the reasoning of that court in holding that MPPAA's provision is not subject to any equitable exception. *See Findlay Truck Line, Inc. v. Central States, Southeast & Southwest Areas Pension Fund*, 726 F.3d 738 (6th Cir. 2013). First, the plain language of the statute requires employers to make the interim payments without exception. The MPPAA provides as follows:

> Withdrawal liability *shall be payable* in accordance with the schedule set forth by the plan sponsor . . . beginning no later than 60 days after the date of the demand *notwithstanding any request for review or appeal of determinations of the amount of such liability or of the schedule*.

*See* 29 U.S.C. § 1399(c)(2) (emphasis added). The MPPAA further provides:

> Payments *shall be made* by an employer in accordance with the determinations made under this part *until the arbitrator issues a final decision with respect to the determination submitted for arbitration*, with any necessary adjustments in subsequent payment for overpayments or underpayments arising out of the decision of the arbitrator with respect to the determination.

*See id.* § 1401(d).  The statute thus makes the interim payments mandatory, without any exception for instances of a questionable claim or irreparable harm.[2]

In addition, application of the plain language comports with the clear intent of Congress in enacting this provision.  "The congressional intent behind 'pay now, dispute later' is to alleviate the risk that during the course of arbitration, an employer will become insolvent, and the fund will not be able to collect in the event of a favorable award."  *See Findlay*, 726 F.3d at 742 (citing *Trustees of Chicago Truck Drivers, Helpers and Warehouse Workers Union (Independent) Pension Fund v. Central Transport, Inc.*, 935 F.2d 114, 118-19 (7th Cir. 1991)).  Employers may be small or thinly capitalized, and thus may go out of business during the arbitration process; but the employer faces no similar risk if the fund holds the stakes, as funds are generally solvent and will be able to repay the employer (including with appropriate interest) if the arbitrator rules in favor of the employer.  *See id.* (quoting *Central Transport*, 935 F.2d at 118-19).  As the Sixth Circuit stated, "[i]t would precisely contradict the congressional purpose of protecting funds from undercapitalized or financially precarious employers if we created an exception to interim payments for employers that would suffer irreparable harm."  *See id.* at 754 (footnote omitted).

In addition, as the Sixth Circuit noted in *Findlay*, the Supreme Court has ruled that a district court as a court of equity has discretion to act unless a statute clearly provides

---

[2] As the Fund notes, Congress did not include such an exception in the statute, although it has amended the statute to provide a different exception to the "pay now, dispute later" provision (an exception that PSF has not asserted in this case).  *See* 29 U.S.C. § 1401(f).

otherwise.  *See id.* at 753 (quoting *United States v. Oakland Cannabis Buyers' Co-op.*, 532 U.S. 483, 496 (2001)).  Thus, this Court's power to make equitable rulings is circumscribed by the plain language of the MPPAA, which requires interim payments without any exception relating to the claim's merits or the financial impact on the employer.

Finally, the Court agrees with the Sixth Circuit that application of an equitable exception that allows for consideration of the likelihood of success on the merits or irreparable harm potentially encroaches on the authority of the arbitrator charged to find facts, and is contrary to the congressional intent that the merits be addressed only in arbitration.  *See id.* at 751 n.6, 754 n.8.

In deciding this issue in *Findlay*, the Sixth Circuit concluded as follows:

> We recognize that there are some situations where interim payments may appear unfair to the employer, and will harm both parties in the long run if the employer is unnecessarily forced out of business.  However, where Congress has already spoken specifically on an issue, it is not the role of this court to remedy those situations.  By passing § 1399(c)(2) and § 1401(d), Congress has already decided for us that "employers *shall* make interim payments," and we must abide by the statute as long as it remains the law.

*See id.* at 754 (emphasis in original).  This Court agrees that the statute must be enforced according to its plain language, notwithstanding PSF's argument that equity favors a different result.[3]

A few other circuits have addressed this issue.  In 1984, a district court enjoined collection of interim payments under the MPPAA, based on the employer's likelihood of

---

[3] In *Boland v. WASCO, Inc.*, 50 F. Supp. 3d 15 (D.D.C. 2014), the court concluded for similar reasons that the "pay now, dispute later" provision of the MPPAA was not subject to an equitable exception.

success in the arbitration and a finding of irreparable harm, and the Second Circuit summarily affirmed for the reasons set forth by the district court. *See T.I.M.E.-DC, Inc. v. New York State Teamsters Conf. Pension & Ret. Fund*, 735 F.2d 60 (2d Cir. 1984) (per curiam), *aff'g* 580 F. Supp. 621 (N.D.N.Y. 1984). Both the Fifth Circuit and the Seventh Circuit have adopted the so-called *McNicholas* standard, which allows for an exception upon a showing of irreparable harm and a frivolous or non-colorable claim for liability payments by the fund. *See Central Transport*, 935 F.2d at 119 (applying exception recognized in *Robbins v. McNicholas Transp. Co.*, 819 F.2d 682 (7th Cir. 1987)); *Trustees of Plumbers and Pipefitters Nat'l Pension Fund v. MAR-LEN, Inc.*, 30 F.3d 621, 626 (5th Cir. 1994) (following Seventh Circuit's *McNicholas* standard in holding that a district court may consider whether a fund claim against a withdrawing employer is frivolous).

Other circuit courts have declined to rule explicitly whether an exception exists, while noting that any such exception would be very narrow. For instance, in *Teamsters Joint Council No. 83 v. Centra, Inc.*, 947 F.2d 115 (4th Cir. 1991), the Fourth Circuit did not expressly adopt the exception, but it noted that the burden for qualifying for such an exception should be "extremely high," in light of the MPPAA's safeguards that ensure that an employer will promptly recover overpayments with interest. *See id.* at 120; *see also Giroux Bros. Transp. v. New England Teamsters & Trucking Indus. Pension Fund*, 73 F.3d 1, 5 (1st Cir. 1996) (declining to decide whether to follow other circuits in adopting an exception for frivolous claims, while noting that such an exception would require a showing of immediate insolvency in light of the clear congressional intent to protect plans in withdrawal liability disputes).

In *Galgay v. Beaverbrook Coal Co.*, 105 F.3d 137 (3d Cir. 1997), the Third Circuit stated that it had "never held that there are any equitable exceptions to the statutory provisions on interim payments," and that it declined to do so in that case. *See id.* at 140. The court cited the plain language of the statute and noted that its jurisdiction was limited to ordering interim payments upon a showing that the fund had complied with the notice requirements. *See id.* The court further noted that the Fifth and Seventh Circuits had limited their exceptions to instances of frivolous claims, and because there was no contention that the fund's claim was frivolous in the case before it, the Third Circuit did not need to decide whether to adopt such a limited exception. *See id.* at 141. Nevertheless, the Third Circuit made clear that financial harm to the employer should not be the basis for an exception, as follows:

> We agree with the reasoning employed by the Fifth and Seventh circuits in concluding that a showing of irreparable harm to the employer is alone insufficient to warrant equitable relief from interim payment liability. In both instances, these courts of appeals [*sic*] have recognized that withdrawing employers are often financially troubled companies. If such companies are allowed to defer paying their debt to the pension funds, and go out of business while liability is being litigated, the pension funds will be saddled with full liability for the underfunded pension benefits. The interim payment provisions are designed to diminish this risk.

> We believe that it would contort the law if we were to allow the undercapitalized or financially precarious companies that pose the very risk to pension funds that MPPAA was designed to correct to defer payment because they pose that risk. It is inappropriate to refuse a preliminary injunction ordering interim withdrawal liability payments on the grounds that the payments might pose a financial risk to the employer.

*See id.* (citations omitted).[4]

PSF argues that this Court should adopt the same exception recognized in *T.I.M.E.* and *McNicholas*, in which the courts considered the probability of success without specifically requiring a frivolous claim. PSF has not cited any cases applying such a standard, however, since the Fifth and Seventh Circuits adopted the exception limited to frivolous claims. It is true that in *McNicholas* the Seventh Circuit did not expressly limit the exception to instances of frivolous claims. In subsequent cases, however, the Seventh Circuit did impose such a limitation. In *Central Transport*, the Seventh Circuit stressed Congress's intent to alleviate the risk to funds that withdrawing employers will become unable to satisfy their withdrawal liability. *See* 935 F.2d 114, 118-19 (7th Cir. 1991). That court further noted that mandatory arbitration was intended to speed the final decision and reduce costs, and it reasoned that "[e]fforts to alleviate the 'harshness' of the MPPAA by examining the employer's probability of success before the arbitrator frustrate achievement of that objective." *See id.* at 119. Thus, the court agreed with other courts that "judges have no equitable power to excuse interim payments," and that "*McNicholas* is at most a recognition that if the fund's claim is frivolous – if the arbitrator is almost certain to rule for the employer – then the plan is engaged in a ploy that the court may defeat." *See id.*

---

[4] The dissenting judge in *Galgay* stated that he did not believe the mandatory nature of the MPPAA provision was so clear, as the statute uses the phrase "shall be payable" instead of "shall be paid." *See Galgay*, 105 F.3d at 142. That judge overlooked the fact, however, that the statute also states that the interim payments "shall be made" by the employer. *See* 29 U.S.C. § 1401(d); *see also Boland*, 50 F. Supp. 3d at 20 n.9 (pointing out this oversight in the *Galgay* dissent in refusing to recognize an equitable exception). The dissenting judge did agree that the equitable exception should be limited to "rare" cases involving frivolous claims. *See Galgay*, 105 F.3d at 144.

Later the same year, the Seventh Circuit reaffirmed this limitation from *Central Transport*, holding that "irreparable harm becomes important only if the employer makes an affirmative showing that the pension fund lacks a colorable claim." *See Trustees of Chicago Truck Drivers, Helpers and Warehouse Workers Union (Independent) Pension Fund v. Rentar Indus., Inc.*, 951 F.2d 152, 155 (7th Cir. 1991) (citing *Central Transport*, 935 F.2d at 119); *see also Central States, Southeast and Southwest Areas Pension Fund v. Bomar Nat'l, Inc.*, 253 F.3d 1011, 1019 (7th Cir. 2001) (Seventh Circuit has "strictly limited" exception to MPPAA's "pay now, dispute later" provision to require showing of frivolous claim and irreparable harm).

In addition, PSF's reliance on the Second Circuit's decision in *T.I.M.E.* is dubious. That court did not engage in any analysis in its summary affirmance, *see* 735 F.2d 60, and district courts within that circuit have stated that the Second Circuit has not decided the issue. *See, e.g.*, *Trustees of Laundry Dry Cleaning Workers and Allied Ret. Fund, Workers United v. Oceanside Int'l Indus., Inc.*, 2018 WL 1517207, at *3 n.1 (S.D.N.Y. Mar. 27, 2018) (citing *Trustees of Amalgamated Ins. Fund v. Steve Petix Clothier Inc.*, 2004 WL 67480, at *4 (S.D.N.Y. Jan. 15, 2004)); *National Pension Plan of the UNITE HERE Workers Pension Fund v. Swan Finishing Co.*, 2006 WL 1292780, at *3 (S.D.N.Y. May 11, 2006).

Thus, if courts have recognized any exception, they have generally limited the exception to instances of frivolous claims. The Court is persuaded by the reasoning of the Sixth Circuit, and it thus concludes that the Tenth Circuit would likely follow *Findlay* in refusing to recognize an equitable exception to the MPPAA's interim-payment mandate.

10

Even if the Tenth Circuit would recognize an exception, however, the Court is confident that the exception would be limited to instances of frivolous claims, for the reasons stated by the Third Circuit and the Seventh Circuit. Basing an exception primarily on the employer's financial injury would undermine the intent of Congress, as in the MPPAA Congress directly addressed the risk of an employer's insolvency in choosing to require interim payments. Thus, any exception must be limited to the most extraordinary circumstances, as when a fund has attempted to extort payments from the employer through a frivolous claim.

In its briefs, PSF has stated expressly that it does not contend that the Fund's claim for withdrawal liability payments in this case is frivolous. Thus, whether the Tenth Circuit refused to recognize an equitable exception or recognized a limited exception for frivolous claims, PSF could not be excused from making the payments in this case. Accordingly, the Court rules that PSF is required to make the payments demanded by the Fund, and it denies PSF's motion for summary judgment. The Court grants the Fund's motion to the extent it seeks a ruling that such payments are required.

In the event of such a ruling, the Fund requests that it be permitted to file a motion seeking payment of a specific amount under the relevant statutes, including interest, liquidated damages, attorney fees, and costs. PSF has not opposed that request. Accordingly, the Fund shall file such a motion within 30 days after issuance of this order.[5]

---

[5] In its response to that motion, PSF may again raise the issue of the Court's authority or discretion to waive interest or statutory damages or attorney fees.

IT IS THEREFORE ORDERED BY THE COURT THAT plaintiffs' motion for summary judgment (Doc. # 21) is hereby **granted** with respect to the issue of liability, and plaintiffs shall file a motion, within 30 days after the issuance of this order, seeking a determination of the specific amount owed by defendant.

IT IS FURTHER ORDERED BY THE COURT THAT defendant's motion for summary judgment (Doc. # 23) is hereby **denied**.

IT IS SO ORDERED.

Dated this 27th day of November, 2019, in Kansas City, Kansas.

s/ John W. Lungstrum_____
John W. Lungstrum
United States District Judge