IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

BOILERMAKER-BLACKSMITH )
NATIONAL PENSION TRUST and )
JOHN FULTZ as Fiduciary, )
 )
                 Plaintiffs, )
 )
v. )    Case No. 18-2467-JWL
 )
PSF INDUSTRIES, INC., )
 )
                 Defendant. )
 )
_____)

## MEMORANDUM AND ORDER

Plaintiffs are a multiemployer pension fund and its fiduciary (collectively, "the Fund"), and defendant PSF Industries, Inc. ("PSF") was an employer that contributed to and then withdrew from the Fund. The Fund brought this suit to enforce PSF's obligation to make interim withdrawal liability payments to the Fund while the parties arbitrate PSF's ultimate liability, pursuant to the Multiemployer Pension Plan Amendments Act of 1980 (MPPAA), 29 U.S.C. §§ 1381-1461. On November 27, 2019, the Court rejected PSF's equitable defense as a matter of law and ruled that PSF was required to make the payments requested by the Fund, and accordingly the Court awarded the Fund summary judgment with respect to liability. *See Boilermaker-Blacksmith Nat'l Pension Trust v. PSF Indus., Inc.*, __ F. Supp. 3d __, 2019 WL 6340064 (D. Kan. Nov. 27, 2019) (Lungstrum, J.).

The Court ordered the Fund to file a motion seeking a determination of the specific amount owed by PSF, *see id.* at *5, and the case presently comes before the Court for ruling on that motion (Doc. # 31).  For the reasons set forth below, the motion is **granted in part and denied in part**.  The Court denies the Fund's request for an award that includes interest on liquidated damages, as the applicable statute does not provide for such an award.  The remainder of the Fund's request is granted.  On or before **February 28, 2020**, the Fund shall submit a revised Schedule A table for calculations through February 9, 2020, that does not include interest on liquidated damages.  The parties shall confer before that submission; if PSF has a good faith objection to the revised calculation in accordance with this opinion, it shall file its objection within seven calendar days after the Fund's submission.

## I.     Background

PSF was an employer that contributed to the Fund, but it permanently ceased making contributions to the Fund in 2017.  The Fund sent PSF a demand letter, in which it stated that PSF had triggered a complete withdrawal from the Fund pursuant to 29 U.S.C. § 1983; that the amount of PSF's withdrawal liability was $16,551,038; and that PSF could pay that amount according to a particular schedule beginning on a particular date.  PSF challenged that determination, the Fund responded, and the parties eventually initiated an arbitration to decide the issue of PSF's withdrawal liability, which arbitration is still pending.  PSF made one payment to the Fund, but it has not made all of the interim payments demanded by the Fund.  In this case, the Fund seeks payment by PSF of all of

2

the demanded withdrawal liability plus other amounts pursuant to 29 U.S.C. § 1132(g)(2). The Fund has now prevailed on that claim, and the Court must determine the amount of the award to the Fund.

**II.  Analysis**

29 U.S.C. § 1451(b) provides that in an action to compel a payment of withdrawal liability, an employer's failure to make a timely payment shall be treated as a delinquent contribution within the meaning of Section 1145. *See id.* 29 U.S.C. § 1132(g)(2) sets forth the damages that a court "shall" award in a successful action by a plan to enforce Section 1145, including (1) the unpaid contributions; (2) interest on the unpaid contributions; (3) the greater of the amount of interest and the amount of liquidated damages provided under the plan; and (4) reasonable attorney fees and costs. *See id.* The Fund seeks an award that includes damages from all four categories. PSF does not dispute that the Fund is entitled to recover an award under Section 1132(g)(2). The Court addresses below the Fund's requests and PSF's objections thereto.

*A.  Delay in Payment of Damages*

In its prior order, the Court stated that in response to the present motion, PSF could re-raise any issue relating to the Court's authority or discretion to waive interest or statutory damages or attorney fees. *See PSF*, 2019 WL 6340064, at *5 n.5. In its present response, PSF "urges the court to exercise its discretion to withhold an award of any statutory damages until the Fund's entitlement to the underlying withdrawal liability is established." The basis for that request is unclear, however. PSF notes only that the Fund will be in a

3

position to refund any principal liability payments that it has collected if PSF prevails in the ongoing arbitration. As the Court ruled in its prior order, PSF is required to make payments even if the arbitrator has not yet made a decision, and PSF has not argued that the Fund is not entitled to these amounts after securing summary judgment in this case. In the prior briefing, PSF argued only that the equitable exception to the requirement to make immediate liability payments should also apply to statutory damages, but the Court has ruled that no such equitable exception applies in this case. PSF has not articulated any basis for delay by the Court in awarding these damages. Accordingly, the Court rejects PSF's argument that statutory damages should not be awarded at this time.

PSF has not objected to the Fund's request for an order to the effect that PSF is legally obligated to make all future interim withdrawal liability payments under the schedule attached to the complaint unless the arbitrator rules otherwise. Therefore, the Court does so order.

### B. *Undisputed Amounts*

The parties agree that PSF made only the first principal payment of withdrawal liability in accordance with the schedule set by the Fund. In its motion, the Fund calculates that a total of $8,286,381.50 is due in principal for 25 outstanding payments, through the latest monthly due date of February 9, 2020. PSF does not dispute this calculation or oppose an award of this amount. Accordingly, the Court awards the Plan that amount for unpaid principal withdrawal liability payments.

The Fund also seeks a total of $134,270.50 in reasonable attorney fees and costs. The Fund has supported this request with declarations and breakdowns of the hours worked and the rates charged by its attorneys. PSF does not object to any portion of this request

or dispute that these fees were reasonably incurred. The Court agrees that the attorneys' hours and rates are reasonable and that the total fees were reasonably incurred. Accordingly, the Court awards the Plan that amount in reasonable attorney fees and costs.

### C. *Potential Award of Double Interest*

Section 1132(g)(2) provides for an award in an amount equal to the greater of the interest on the unpaid contributions and liquidated damages provided for under the plan (with a cap of 20 percent). *See id.* The Fund requests an award of interest in excess of $1.1 million and calculates liquidated damages to total approximately $860,000. Thus, because that interest amount would exceed the liquidated damages amount, the Fund requests a double award of interest, in accordance with Section 1132(g)(2).

PSF appears to object to this request for double interest (instead of interest plus liquidated damages) as a new request or changed position from the complaint and pretrial order, in which the Fund claimed liquidated damages. The Court rejects this argument. In the complaint, the Fund specifically cited this provision of the statute that allows recovery of whichever amount is greater, and while it noted at that time that an award of liquidated would yield the larger amount, it also reserved its right to adjust its calculations after amounts had increased. The Fund made a similar reservation in the pretrial order. The Court does not interpret the pretrial order as including a waiver by the Fund to its right to the greater amount as set forth in the statute.

Moreover, the result would be the same even if the Fund had failed to make any possible claim to double interest in the pretrial order. Fed. R. Civ. P. 54(c) provides that a final judgment "should grant the relief to which each party is entitled, even if the party has

5

not demanded that relief in its pleadings." *See id.* The applicable statute in this case states that the court *shall* award a prevailing plan the greater of the interest and liquidated damages; thus, the Fund is entitled to an award of double interest in this case, even in the absence of a prior claim for that relief. *See In re Universal Serv. Fund Tel. Billing Practices Litig.*, 2009 WL 435111, at *13-15 (D. Kan. Feb. 20, 2009) (Lungstrum, J.) (citing Rule 54(c) in allowing a post-trial claim for prejudgment interest), *aff'd*, 619 F.3d 1188 (10th Cir. 2010). In addition, even if a formal claim were required, PSF can have suffered no prejudice in light of the clear operation of the statute, and thus the Court would allow an amendment of the pretrial order at this time to allow the claim. *See id.* (because the plaintiff was entitled to interest as a matter of law, the defendant would suffer no prejudice from an amendment of the pretrial order to state a claim for interest). Therefore, if the Fund's interest award exceeds the amount of liquidated damages, the Court will award the Fund double interest in lieu of separate awards of interest and liquidated damages, in accordance with the statute.

### D. *Interest Calculation*

Section 1132(g)(2) provides that "interest on unpaid contributions shall be determined by using the rate provided under the plan." *See* 29 U.S.C. § 1132(g)(2). In calculating interest for this award, the Fund has used a rate of 12 percent, pursuant to the plan's rate for interest on unpaid contributions. PSF does not object to the use of that interest rate, which the Court will apply here.

In requesting an award, however, the Fund has calculated interest not only on the unpaid principal amounts, but also on liquidated damages incurred on those unpaid

6

amounts. In doing so, the Fund relies on a provision in the plan that provides for interest on both unpaid contributions and liquidated damages. The Court concludes, however, that Section 1132(g)(2) does not permit an award of interest on liquidated damages.[1] The statute provides for awards of "the unpaid contributions" and "interest on the unpaid contributions," and there is no provision for any other interest. *See id.* The statute also provides for an award equal to the greater of the "interest on unpaid contributions" and "liquidated damages provided for under the plan in an amount not in excess of 20 percent," and neither option includes interest on liquidated damages. *See id.* This interpretation is supported by the statute's 20-percent cap on liquidated damages, as a fund could effectively exceed that cap by recovering both liquidated damages and interest on those damages. *See Carpenters Southwest Admin. Corp. v. Ekstrom Indus.*, 2009 WL 10671631, at *6 (C.D. Cal. Nov. 25, 2009) (permitting award of interest on liquidated damages would effectively allow a party to exceed the 20-percent cap); *Bay Area Painters v. Alta Specialty*, 2008 WL 114931, at *5 (N.D. Cal. Jan. 10, 2008) (same).

Section 1132(g)(2) also allows an award of "such other legal or equitable relief as the court deems appropriate." *See* 29 U.S.C. § 1132(g)(2)(E). The Court declines to award the Fund interest on liquidated damages under this provision, however, as Congress has directly addressed the issue by providing specifically for interest on unpaid contributions

---

[1] The Fund notes that PSF has not objected to an award of interest on the liquidated damages. The Court has an independent responsibility, however, to make sure that it does not exceed its authority to award damages under the statute. *See, e.g.*, *Carpenters Southwest Admin. Corp. v. Unger Concrete Structures, LLC*, 2008 WL 11338217, at *1 n.4 (C.D. Cal. Dec. 2, 2008) (raising this issue *sua sponte* in determining a default judgment award under Section 1132(g)).

and for liquidated damages without providing for interest on liquidated damages. *See Southwest Carpenters Pension Trust v. Paramount Scaffold, Inc.*, 2017 WL 8292772, at *7 (C.D. Cal. Feb. 7, 2017) (declining to award interest on liquidated damages under this provision).

The Fund's only argument in support of this portion of the requested award is that the plan allows for interest on liquidated damages in the event of unpaid contributions. The Court's authority, however, is circumscribed by the applicable statute. That statute states that "interest on unpaid contributions" shall be determined by using the *rate* provided in the plan; it does not state that damages may be awarded if allowed by the plan. *See* 29 U.S.C. § 1132(g)(2). The statute does not allow the interest requested by the Fund. *See Ekstrom*, 2009 WL 10671631, at *6 (noting that the plaintiffs had cited no authority indicating that the plan agreements could provide a greater remedy than that indicated in Section 1132(g) or that Congress intended to provide such a remedy).

The Fund has also cited two cases in which another judge of this district awarded it damages under Section 1132(g) that included interest on liquidated damages. Each case involved a default judgment, however, and in neither case did the court address whether the statute permitted such an award. *See Boilermaker-Blacksmith Nat'l Pension Fund v. South Buffalo Elec., Inc.*, 2016 WL 2989291, at *1 (D. Kan. May 24, 2016); *Boilermaker-Blacksmith Nat'l Pension Fund v. A & B Welding & Constr., Inc.*, 2011 WL 5151965, at *2 (D. Kan. Oct. 28, 2011). Thus, those cases are not helpful. The Fund has not cited any instance in which a court affirmatively ruled that an award of interest on liquidated damages was allowed under Section 1132(g)(2). On the other hand, at least four courts

8

have addressed the issue and concluded that such an award is *not* permitted. *See Paramount Scaffold*, 2017 WL 8292772, at *7; *Ekstrom*, 2009 WL 10671631, at *6; *Unger*, 2008 WL 11338217, at *1 n.4; *Bay Area Painters*, 2008 WL 114931, at *5. The Court agrees with these courts that Section 1132(g)(2) does not authorize an award of interest on liquidated damages, and it therefore declines to award the Fund such damages.

The Fund has not provided interest calculations that do not include interest on liquidated damages. Accordingly, the Fund should submit a revised calculation of interest, as set forth herein. Only then may the Court determine a proper award under Section 1132(g)(2)(B) and (C).

### E. *Liquidated Damages Percentage*

Because a revised interest calculation may affect the comparison with the liquidated damages amount, the Court will address PSF's objection to the Fund's calculation of the amount of liquidated damages. In making that calculation, the Fund has applied a rate of 10 percent for payments due through September 9, 2019 (payments 2 through 21) and a rate of 12 percent for payments due after that date (payments 22 through 26 and future payments), based on a policy change by the Fund's board in September 2019. PSF does not object to the use of the 10-percent rate, but it does object to the use of the increased rate for the most recent payments. In arguing that the Fund should not be permitted to increase this rate from 10 percent after the date of PSF's withdrawal from the Fund and the start of its withdrawal liability obligation, PSF relies solely on the recent case of *National Retirement Fund v. Metz Culinary Management, Inc.*, 946 F.3d 146 (2d Cir. 2020). That

9

case is readily distinguishable, however, and does not support PSF's objection to the use of the increased rate in this case.

In *Metz*, the plaintiff fund, in calculating the employer's withdrawal liability, used an interest rate assumption adopted after the employer's withdrawal from the fund, with the result that the employer's liability was greatly increased. *See id.* at 148-49. The Second Circuit held that the plan was instead required to use the interest rate assumption in effect on the measurement date for the calculation of the withdrawal liability (the last day of the year preceding the withdrawal). *See id.* at 152. The court relied heavily on the fact that the fund had attempted to make a change that applied retroactively, which increased the opportunity for unfair manipulation. *See id.* at 150-52. In this case, however, the change in the liquidated damages rate has only been applied prospectively – the Fund has applied the increased rate only to missed payments due after the date of the policy change. The amount of any liability incurred before that date has not been affected; the change applies only to liability for liquidated damages that PSF has incurred after that date by failing to make liability payments (the amount of which has not been changed). Thus, the rationale for the Second Circuit's decision in *Metz* does not apply here. PSF could have avoided the effect of the change simply by making payments as required.

The Second Circuit relied in part on 29 U.S.C. § 1394(a), which states that "[n]o plan rule or amendment . . . may be applied without the employer's consent with respect to liability for a withdrawal or partial withdrawal which occurred before the date on which the rule or amendment was adopted." *See id.* The Second Circuit noted that the statute does not define "plan rule or amendment," but it nevertheless applied this statute (and its

legislative history) to the use of a different interest rate assumption by a fund's actuarial expert. *See Metz*, 946 F.3d at 150-51. Thus, the Court will assume that the Fund's policy change in this case could qualify as a "plan rule or amendment" for purposes of this statute. Nevertheless, Section 1394(a) does not apply here because the amendment was not a change "with respect to liability for a withdrawal." Unlike the change in *Metz*, the change here did not affect the amount of PSF's withdrawal liability. As noted in *Metz*, the legislative history reveals that Section 1394 was intended to prohibit the retroactive application of a rule relating to withdrawal liability. *See id.* at 150-51 (citing H.R. Rep. No. 96-869, pt. 2 at 30). The Fund's prospective change of a rate that affects the amount of damages in the event of missed payments is not the type of retroactive change prohibited by the statute.[2]

PSF has cited no other authority that would prohibit the prospective application of the changed rate. Accordingly, the Court rejects PSF's argument that the 10-percent rate for liquidated damages should be applied for all missed payments. PSF has not otherwise objected to the Fund's calculation of liquidated damages. Therefore, the Court accepts the Fund's calculation of total liquidated damages through the February 9, 2020, payment date to be $861,783.68. That amount will be compared with the Fund's revised interest calculation to determine the Fund's award under Section 1132(g)(2)(C).

---

[2] In addition, because this rate change does not fall within the scope of Section 1394(a), the notice requirement of 1394(b) does not apply here. *See* 29 U.S.C. § 1394.

IT IS THEREFORE ORDERED BY THE COURT THAT the Fund's motion for a determination of damages (Doc. # 31) is hereby **granted in part and denied in part**. The Court denies the Fund's request for an award that includes interest on liquidated damages. The remainder of the Fund's request is granted. On or before **February 28, 2020**, the Fund shall submit a revised Schedule A table for calculations through February 9, 2020, that does not include interest on liquidated damages. The parties shall confer before that submission; if PSF has a good faith objection to the revised calculation in accordance with this opinion, it shall file its objection within seven calendar days after the Fund's submission.

IT IS FURTHER ORDERED BY THE COURT THAT defendant is obligated to make all future interim withdrawal liability payments under the schedule attached to the complaint unless the arbitrator rules otherwise.

IT IS SO ORDERED.

Dated this 21st day of February, 2020, in Kansas City, Kansas.

s/ John W. Lungstrum  
John W. Lungstrum  
United States District Judge